UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

EMILIO LACEN,
    Petitioner,

v.          CIVIL ACTION NO. 16-10783-IT

LOIS RUSSO,
    Respondent.

REPORT AND RECOMMENDATION
ON PETITION FOR WRIT OF HABEAS CORPUS (#1).

KELLEY, U.S.M.J.

I.    INTRODUCTION.

Petitioner Emilio Lacen filed a petition for writ of habeas corpus (#1) pursuant to 28 U.S.C. § 2254, seeking habeas relief from his 2011 conviction for trafficking in cocaine in an amount greater than two hundred grams, in violation of Mass. Gen. L. ch. 94C, § 32E(b). (S.A. at 1-6.)[1] The charges arose out of an incident in March 2009, where Massachusetts State Police Trooper Kyle Flanagan, who was attempting to stop Lacen for a traffic violation, saw Lacen throw a plastic bag containing cocaine out of his car as he fled. (S.A. at 200-01.)

Lacen's petition asserts two claims for habeas relief. First, he contends his Fifth Amendment right to due process was violated when the trial judge presided over his trial after stating multiple times that she would recuse herself. (#1 at 7.) Second, he argues his Sixth

---

[1] Respondent's Supplemental Answer, #12 on the docket, will be cited as S.A. at (page number).

1

Amendment rights were violated where he was not permitted to call the assistant district attorney (ADA) as a witness to impeach Trooper Flanagan. *Id*. at 8.

For the reasons set out below, I recommend the petition be DENIED.

II.     BACKGROUND.

Lacen was convicted in February 2011 after a jury trial before Judge Kottmyer, and was sentenced to fifteen to eighteen years in state prison. (S.A. at 3-6.) He appealed his conviction to the Massachusetts Appeals Court (MAC), asserting Judge Kottmyer erred by: (i) presiding over his trial, despite having said multiple times that she would recuse herself; (ii) refusing to allow defense counsel to call the ADA as a witness in order to impeach Trooper Flanagan; and (iii) denying his post-trial request to voir dire the ADA and his post-trial motion to obtain Trooper Flanagan's internal affairs records. (S.A. at 16.) In an opinion entered October 5, 2015, the MAC affirmed Lacen's conviction, finding: (a) the trial judge did not abuse her discretion in failing to recuse; (b) any error in denying Lacen's request to call the ADA as a witness was harmless; and (c) there was no error in denying Lacen's request for post-trial discovery. *Commonwealth v. Lacen,* 38 N.E.3d 323 (Table), No. 12-P-783, 2015 WL 5776102 (Mass. App. Ct. Oct. 5, 2015) (unpublished).[2]  The facts below are taken from the MAC's opinion and are presumed to be correct. 28 U.S.C. § 2254(e)(1); *Cooper v. Bergeron*, 778 F.3d 294, 296 (1st Cir. 2015).

   A.  **Massachusetts Appeals Court Proceedings.**

       1.   The Trial Judge's Refusal to Recuse Herself.

Prior to trial, in October 2010, Lacen's counsel, Attorney Stephen Judge, filed a motion to withdraw. During the hearing on the motion, Attorney Judge said at a sidebar conference that Lacen's family wanted Attorney Judge to withdraw, had threatened his assistant, sought a refund

---

[2] Citations will be to the Westlaw version, as it includes page numbers.

of fees paid to him, and wanted him to pay for a new attorney selected by Lacen's family. 2015 WL 5776102, at *1. After hearing from counsel, Judge Kottmyer said, "I won't try the case based on what you've told me. I won't try it, I'll have another session try it. I will be involved to the extent of being sure the case is on schedule to be tried." *Id*. Two days later, on October 29, 2010, she reiterated, "It's not going to be tried in this session because as I explained in [the defendant's] presence the other day, [counsel] made certain information known to me and I think in fairness to [the defendant] the judge who tries the case should not know that information." *Id.*

Despite her statements, Judge Kottmyer did preside over Lacen's trial. *Id.* On February 15, 2011, she heard final pretrial motions, empaneled a jury, and allowed the parties to conduct voir dire of two witnesses. *Id.* At the hearing on February 15, Lacen's counsel reported that Lacen had "serious concerns" about Judge Kottmyer's presiding over his trial, given her prior statements that she was going to recuse herself. *Id.* Judge Kottmyer responded, "That's fair. That's fair." *Id.* She stated that her initial decision to recuse was made "too hastily," explaining it was not the result of any belief that she could not be fair or make evidentiary rulings consistent with her understanding of the law. *Id.* She said she would preside over Lacen's trial because "the case is simply, the situation is too complicated to send it out to another session for trial." *Id.* She explained, "I have examined, as I am required to do, my conscience. I have never believed that I could not be fair in this case. To the extent that I did say that I would recuse myself, it was predicated solely on my desire that a defendant in a case like this one, where the stakes are so high for the defendant in terms of the potential sentence in the event of a conviction, that the defendant did not believe that the judge is not open minded and fair to him." *Id.*

In finding Judge Kottmyer did not abuse her discretion in presiding over Lacen's trial, the MAC noted that "there is at least some substance to a claim that a judge's 'impartiality might

3

reasonably be questioned,' *S.J.C. Rule 3:09, Canon 3(E)(1)*, as appearing in 440 Mass. 1319 (2003)," when the judge repeatedly says prior to trial that "in fairness" she will not preside over it, and then does so. 2015 WL 5776102, at *2. The MAC, however, observed that the information that caused Judge Kottmyer to say she would recuse herself was obtained during a motion hearing, and "information obtained during judicial proceedings does not ordinarily form the basis for a finding that recusal is mandatory." *Id.*, at *2 (citing *Commonwealth v. Adkinson*, 442 Mass. 410, 415 (2004) ("To show that a judge abused his discretion by failing to recuse himself, a defendant ordinarily must show that the judge demonstrated a bias or prejudice arising from an extrajudicial source, and not from something learned from participation in the case.")). In addition, the MAC found that "here, the judge's subsequent thorough explanation of why she initially was going to recuse herself and why she changed her mind clarified what she initially meant by 'in fairness,' and why she ultimately concluded recusal was unnecessary." *Id*. The MAC held, "This case approaches the line where a refusal to recuse would demand reversal, but does not cross it." *Id.*

    2. <u>The Trial Judge's Denial of Lacen's Motion to Call the ADA as a Witness to Impeach Trooper Flanagan</u>.

For approximately a year prior to trial, Trooper Flanagan had possession of a copy of a tape, commonly referred to as a "turret tape," containing a record of his radio communications when he conducted the traffic stop of Lacen's car. *Id*. About a year after Lacen's arrest, on March 15, 2010, the ADA reported in open court that Trooper Flanagan told the ADA that he did not believe there was a turret tape from Lacen's traffic stop, but that Trooper Flanagan was investigating whether any recording existed. *Id.* Once Lacen formally requested the tape, the Commonwealth turned over either an incomplete or irrelevant recording. *Id.* About a month later,

the ADA reported to the court that Trooper Flanagan had discovered a copy of the turret tape in his car, and the ADA had given Lacen's attorney a copy of the tape. *Id.*

During his opening statement at trial, Lacen's attorney denounced Trooper Flanagan's handling of the turret tape, arguing the trooper misled the ADA into thinking no tape existed, which, in turn, caused Lacen to miss opportunities to impeach Trooper Flanagan during pretrial evidentiary hearings. *Id.* During defense counsel's cross-examination of Trooper Flanagan, the judge sustained the Commonwealth's objections to questions about what Trooper Flanagan told the ADA. *Id.* Lacen asked to call the ADA as a witness to impeach Trooper Flanagan by exploring what Trooper Flanagan told the ADA and how the ADA had discovered Trooper Flanagan had the turret tape in his cruiser. Lacen asserted the ADA would have "valuably raised questions of Trooper Flanagan's credibility generally, and of his bias in this case." *Id.*

Because Judge Kottmyer had sustained the Commonwealth's objections concerning what Trooper Flanagan told the ADA, she denied Lacen's request to call the ADA as a witness, suggesting instead that defense counsel question Attorney Judge to attempt to lay a sufficient foundation to impeach Trooper Flanagan about the turret tape. *Id.*, at *3. Trial counsel conducted a voir dire of Attorney Judge outside of the jury's presence on the last day of trial, but "it yielded nothing relevant." *Id.*

The same day, the ADA filed an affidavit concerning his interactions with Trooper Flanagan and the turret tape, in which he averred that he "did not have a specific recollection of Trooper Flanagan telling [him] that the recordings did not exist or making the representation that he told me that they did not exist." *Id*. The ADA also stated in the affidavit that he recalled telling Trooper Flanagan there were concerns that the recording produced to Lacen "was not the right recording." *Id*. Trooper Flanagan responded that he had a copy of the turret tape in his

5

cruiser, he had listened to the tape, it was from Lacen's arrest, and he offered to retrieve the tape. *Id.*

The MAC found that there was nothing in the record to suggest that if the ADA had been called to the stand, his testimony would have differed from the testimony proffered in his affidavit. *Id*. The MAC further found:

> Such testimony would not have been helpful in impeaching Trooper Flanagan. Consequently, even if there was error in failing to allow the prosecutor to be called when defendant asked to do so, a question [the MAC] need not and [did] not decide, the defendant has not met his burden of showing any error was prejudicial.

*Id*.

With regard to whether it was error for the trial judge to refuse to allow Lacen to conduct a voir dire of the ADA after the trial, the MAC found that "[i]n light of the prosecutor's affidavit and the original defense attorney's testimony at the voir dire hearing, there was no abuse of discretion in denying the defendant an opportunity to conduct a voir dire examination of the prosecutor." *Id*.

**B. Request for Appellate Review by the Massachusetts Supreme Judicial Court.**

On October 23, 2015, Lacen filed an application for leave to obtain further appellate review (ALOFAR) in the Massachusetts Supreme Judicial Court (SJC). (S.A. at 256.) He raised two issues: whether the trial court's refusal to recuse was an abuse of discretion and created an unfair trial, and whether the trial court's refusal to allow Lacen to call the ADA as a witness at trial, in order to impeach Trooper Flanagan, and the judge's refusal to allow Lacen to conduct a voir dire of the ADA after the trial, was prejudicial error in violation of his Sixth Amendment rights. *Id*. at 268-71. The SJC summarily denied Lacen's ALOFAR. *Commonwealth v. Lacen*, 44 N.E.3d 861 (Table) (Mass. 2016).

Lacen timely filed the instant petition for habeas relief with this court on April 22, 2016. (#1.)

III.    DISCUSSION.

    **A.  General Habeas Principles.**

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254, a federal court may not grant a petition for a writ of habeas corpus for a claim adjudicated on the merits in state court unless the state court's decision was: (1) contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d).

A state court's decision is contrary to the Supreme Court's clearly established law if it applies a rule that contradicts governing Supreme Court precedent, or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that of the Supreme Court]." *Mitchell v. Esparza,* 540 U.S. 12, 16 (2003) (citing *Williams v. Taylor,* 529 U.S. 362, 405-06 (2000)); *Price v. Vincent,* 538 U.S. 634, 640 (2003); *Early v. Packer,* 537 U.S. 3, 7-8 (2002) (per curium).

    **B.  The Exhaustion Requirement.**

AEDPA requires that, before a petitioner may challenge his custody under federal law, he must first "fairly present" any federal claims in the state court. *Baldwin v. Reese,* 541 U.S. 27, 32 (2004); 28 U.S.C. § 2254(b)(1). A claim is fairly presented where a reasonable jurist would have been alerted to the existence of the federal question. *Sanchez v. Roden*, 753 F.3d 279, 294 (1st Cir. 2014). As "exhaustion obligations mandate that a habeas petitioner present, or do his best to present, his federal claim to the state's highest tribunal," *Adelson v. DiPaola*, 131 F.3d 259, 263

7

(1st Cir. 1997), in Massachusetts, the exhaustion requirement entails presenting the federal claim to the SJC within the "four corners of [a petitioner's] ALOFAR." *Sanchez*, 753 F.3d at 294.

Respondent asserts that Lacen did not exhaust his Fifth Amendment claim concerning recusal in his ALOFAR, as the ALOFAR lacked the specificity necessary to alert the SJC to the existence of any federal due process claim. (#27 at 5-7.) The court disagrees. Petitioner expressly stated that having an impartial judge preside over a criminal trial is guaranteed by "state and federal due process rights." (S.A. at 264.) He cited *Commonwealth v. Campbell*, 366 N.E.2d 44, 57 (Mass. App. Ct. 1977), for this proposition, a case in which the MAC, citing both "federal due process" and the Massachusetts Declaration of Rights, and federal and state cases, affirmed the constitutional foundation of the right to be tried before an independent judge. *Id*.

"A litigant satisfies the fair presentment requirement by identifying a claim as federal in his or her brief to a state appellate court." *Sanchez*, 753 F.3d at 296 (citation omitted). Petitioner here relied on a specific provision of the Constitution, *see Coningford v. Rhode Island*, 640 F.3d 478, 482 (1st Cir. 2011), and cited to a state court decision which relied on federal law, *see Sanchez*, 753 F.3d at 294 (citing *Casella v. Clemons*, 485 F.3d 162 (1st Cir. 2000)). The court finds that he satisfied the "fair presentment" standard.[3]

### C. Merits of Lacen's Habeas Petition.

1. <u>Violation of Fifth Amendment Right to Due Process</u>.

Lacen argues the trial judge's decision to preside over his trial was a violation of his right to due process under the Fifth and Fourteenth Amendments of the Constitution and that the

---

[3] Even if Lacen had not exhausted his claim, the court could still deny it on the merits. *See* 28 U.S.C. § 2254(b)(2) (codifying Supreme Court's decision in *Granberry v. Greer*, 481 U.S. 129, 135 (1985), where the Court held that a federal court may deny an unexhausted habeas claim on the merits where the claims in the petition are plainly incapable of justifying relief).

MAC's opinion finding that there was no error in her doing so was contrary to and an unreasonable application of clearly established federal law. (#26 at 18.)

"A fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison,* 349 U.S. 133, 136 (1955); *Bracy v. Gramley,* 520 U.S. 899, 904 (1997) ("[T]he floor established by the Due Process Clause clearly requires a 'fair trial in a fair tribunal,' . . . before a judge with no actual bias against the defendant or interest in the outcome of his particular case.") (quoting *Winthrow v. Larkin,* 421 U.S. 35, 46 (1985)) (other citations omitted). As Lacen acknowledges in his reply (#29 at 3), however, "most questions concerning a judge's qualifications to hear a case are not constitutional ones, because the Due Process Clause of the Fourteenth Amendment establishes a constitutional floor, not a uniform standard." *Bracy,* 520 U.S. at 904 (citing *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 828 (1986), and noting that "these questions are, in most cases, answered by common law statute, or the professional standards of the bench and bar"); *see also FTC v. Cement Institute*, 333 U.S. 683, 702 (1948) (stating "most matters relating to judicial disqualification [do] not rise to a constitutional level"); *Tumey v. Ohio,* 273 U.S. 510, 523 (1927) (recognizing that not all questions of judicial qualification involve constitutional validity, and "matters of kinship, personal bias, state policy, remoteness of interest, would seem generally to be matters merely of legislative discretion"). Indeed, the Supreme Court has characterized situations where the Constitution requires a judge's recusal as "extraordinary." *Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 887 (2009) (collecting Court's recusal cases to illustrate that "[i]n each case, the Court dealt with extreme facts that created an unconstitutional probability of bias that cannot be defined with precision") (citing *Lavoie*, 475 U.S. at 822) (other citations omitted).

For example, the Supreme Court has held that the due process clause mandates a judge's recusal where the judge has a "direct, personal, substantial, pecuniary interest in the case." *Tumey,* 273 U.S. at 523 (holding judge cannot preside where his compensation depends upon convicting defendant); *Caperton*, 556 U.S. at 884-87 (holding judge cannot sit where his election campaign received such large financial contributions from litigant's CEO as to create a "serious objective risk of actual bias"); *Lavoie,* 475 U.S. at 824 (holding state court judge cannot preside over case that raises the same issues as a different state court case in which the judge is a plaintiff).

In addition, non-pecuniary interests that "tempt adjudicators to disregard neutrality" also offend due process. *Caperton,* 556 U.S. at 878. For instance, the Supreme Court has held that the due process clause mandates recusal where the judge seeks to adjudicate a criminal contempt charge where he "cannot be, in the very nature of things, wholly disinterested." *Murchison,* 349 U.S. at 137-38 (holding judge acting as "one-person grand jury" under Michigan law cannot, consistent with the due process clause of the Fourteenth Amendment, summarily convict a witness for criminal contempt for the witness' conduct in the secret hearings); *see also Offutt v. United States,* 348 U.S. 11, 16-17 (1954) (holding judge cannot adjudicate contempt charges where he was "personally embroiled" in the alleged contemptuous conduct by having called the alleged contemnor "disgraceful and disreputable" and "unworthy of being a member of the [legal] profession," and threating to have the "Marshal stick a gag in [the contemnor's] mouth"); *Mayberry v. Pennsylvania*, 400 U.S. 455, 466 (1971) (recusal required where insulting attacks upon judge's integrity carried "such potential for bias as to require disqualification" because they were "apt to strike at the most vulnerable and human qualities of a judge's temperament").

The inquiry whether a judge is required to recuse under the due process clause is an objective one—namely, "whether the average judge in his [or her] position is likely to be neutral, or whether there is an unconstitutional potential for bias." *Caperton,* 556 U.S. at 881 (internal marks omitted). Here, Lacen's due process rights were not violated by Judge Kottmyer's decision to preside over Lacen's trial.

As an initial matter, the court notes that bias is not easily established, as there is a presumption that public officials have properly discharged their official duties. *See Bracy,* 520 U.S. at 909; *Tumey,* 273 U.S. at 532. In addition, information learned from participation in a case, as opposed to information learned from an extrajudicial source, ordinarily does not constitute a basis for recusal, unless such information causes a judge to "display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994).

Lacen argues Judge Kottmyer's "pervasive bias" against him was demonstrated when she thwarted Lacen's efforts to impeach Trooper Flanagan at trial by not letting him call the ADA as a witness; when she denied his motion to voir dire the ADA after trial; and when she denied post-trial motions for discovery. (#26 at 15-16.) All of these matters were discussed by the MAC, which found that the testimony of the ADA would not have been helpful in impeaching Trooper Flanagan, and that there was no basis for the request for post-trial discovery. 2015 WL 5776102, at *3.

In short, Lacen has not established that this is one of those extraordinary cases where the trial judge's decision not to recuse rises to the constitutional level. The MAC's decision was not contrary to, nor did it involve an unreasonable application of, clearly established Supreme Court law.

2. <u>Violation of Sixth Amendment Right to Compulsory Process</u>.

In his petition, Lacen stated that the trial court erred in not allowing him to impeach Trooper Flanagan with the testimony of the ADA, in violation of his Sixth Amendment rights. (#1 at 9.) While his petition referred only to the Sixth Amendment, petitioner cited both the Confrontation Clause and the Compulsory Process Clause of the Sixth Amendment in his brief. (#26 at 18, 20.) Respondent finds fault with this, noting that petitioner did not cite the Confrontation Clause in his ALOFAR and stating that at any rate, petitioner's reliance on the Confrontation Clause "seems misplaced," as the right to confrontation is only meant to prevent defense counsel from being limited in asking questions on cross-examination. (#27 at 11.) Respondent takes too narrow a view of both the Sixth Amendment and of the claims that petitioner is making. Petitioner plainly is asserting that he was not allowed to put on a defense, a right guaranteed by the Sixth Amendment.

"Few rights are more fundamental that that of an accused to present witnesses in his own defense." *Taylor v. Illinois*, 484 U.S. 400, 408 (1988) (citing *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973)). It is bedrock constitutional law that a criminal defendant should not only be allowed to impeach a witness by cross-examination, but should be allowed to call another witness for that same purpose. "The right to offer testimony is thus grounded in the Sixth Amendment even though it is not expressly described in so many words…" *Id*. at 409. "Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law." *Washington v. Texas*, 388 U.S. 14, 19 (1967). Here, petitioner's references to the Sixth Amendment and his application of the law to the facts in his ALOFAR, habeas petition, and in his brief in support of his petition, make clear that he is

arguing that he was prevented from impeaching Trooper Flanagan on cross-examination with statements he allegedly made to the ADA, that he was prevented from putting on this evidence again when he was not permitted to call the ADA as a witness at trial, and that his right to present evidence in his favor was further violated when he was not allowed to voir dire the ADA after trial. Given the facts of the case, he properly made claims concerning his right to cross-examine the witness against him, his right to compulsory process, and generally his Sixth Amendment right to offer testimony in his defense. None of these claims is "misplaced."

The weakness of Lacen's claim, however, is that as the MAC found, he cannot show prejudice. Focusing on the compulsory process claim, the Sixth Amendment guarantees a criminal defendant "compulsory process for obtaining *witnesses in his favor*." *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982) (emphasis in original); *Washington*, 388 U.S. at 17-19. Although the right to compulsory process is "fundamental, it is not absolute, and must be weighed against countervailing public interests." *United States v. Levy-Cordero,* 67 F.3d 1002, 1012-13 (1st Cir. 1995) (citing *Taylor v. Illinois*, 484 U.S. at 414-15 ("The factors to consider in the balance include the 'integrity of the adversary process, which depends both upon the presentation of reliable evidence and the rejection of unreliable evidence, the interest in the fair and efficient administration of justice, and the potential prejudice to the truth determining function of the trial process.")  In order to show a constitutional violation of the right to compulsory process, "a defendant must establish that the testimony was material and favorable to his defense, *and* that the exclusion was 'arbitrary' or 'disproportionate' to the purpose of the evidentiary rule pursuant to which it was excluded." *Forte v. Mederios,* 239 F. Supp. 3d 310, 320 (D. Mass. 2017) (emphasis in original) (citing *Valenzuela-Bernal*, 458 U.S. at 867) (other citations omitted). Testimony is material where there is a "reasonable likelihood that the

testimony could have affected the judgment of trier of fact." *Valenzuela-Bernal*, 458 U.S. at 873-74.

Here, Lacen has not established that the testimony he sought to elicit from the ADA was material or favorable to his defense. There is nothing in the record to show that the ADA's testimony would have differed from the testimony proffered in his affidavit—that (a) the ADA did not have a specific recollection that Trooper Flanagan told him that the turret tape did not exist; and (b) that Trooper Flanagan, once apprised by the ADA that the wrong turret tape had been produced, discovered a copy of the correct turret tape in his cruiser and handed it over. As the MAC found, that testimony would not have been helpful to impeach Trooper Flanagan. 2015 WL 5776102, at *2. Thus the court cannot find there was a reasonable likelihood Trooper Flanagan's testimony could have affected the trier-of-fact's judgment. Because Lacen has not shown the testimony was favorable or material to his defense, there was no Sixth Amendment violation in excluding it.

Accordingly, the court recommends that this claim be denied.

IV. CONCLUSION.

For the reasons stated above, I RECOMMEND that petitioner Emilio Lacen's habeas petition (#1) be DENIED.

V. REVIEW BY DISTRICT JUDGE.

The parties are hereby advised that any party who objects to this recommendation must file specific written objections with the Clerk of this Court within fourteen days of the party's receipt of this Report and Recommendation. The objections must specifically identify the portion of the recommendation to which objections are made and state the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly

indicated that failure to comply with Fed. R. Civ. P. 72(b) shall preclude further appellate review. *See Keating v. Secretary of Health & Human Servs.*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1st Cir. 1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

                                                              /s/ M. Page Kelley
                                                              M. Page Kelley
September 18, 2018                                  United States Magistrate Judge